## The Attorney General v. Henry D. Smith and another.

*State land office: Reserved lands: Order of reservation: Copy: Evidence.* Where an order headed: "Michigan State Land Office, Dec. 1, 1859," and purporting to be a reservation from sale of certain lands specified, and to be signed by the commissioner, though in the handwriting of one of the clerks in the office, has been pasted in the book of the land office in which advertised offerings are kept, though the order of the commissioner reserving them is not found in any other form in the office, and where the commissioner in his annual report for the following year officially reports said lands as reserved, it is a reasonable inference that the order in the handwriting of the clerk is a copy of an original since lost or destroyed; and this would be sufficient evidence that such land had been withheld from sale.

*Statute construed: Mineral lands: Re-offering: Public sales: Private entry.* . The provision of the act of 1868 (*Sess. L. 1868, p. 277*) that the swamp and primary-school lands in the mineral range of the upper peninsula theretofore withheld from market as mineral lands should, with certain exceptions, be re-offered and sold in the same manner as other swamp and primary-school lands, contemplates an offering at public auction before they are subject to private entry at the land office.

*Construction of statutes: State policy: Swamp and primary school lands: Public sales: Private entry.* It had been the settled policy of the state before the passage of the act of 1868, that while none of these lands should be disposed of at less than a fixed minimum price, an opportunity should be made for obtaining the highest price that competition could bring on offering them at public sale after due notice, before they were to be entered on the books of the land office as subject to sale on private application; and an intent will not be lightly inferred from any merely equivocal words to depart from this settled policy, especially in the case of lands which had been supposed exceptionally valuable, and reserved for that reason from the previous public offerings.

*Equity pleading and practice: Informations: Invalid patents.* An information to vacate a patent issued by the commissioner of the land office which, besides averring that the lands in question had been selected and reserved by the governor under said act of 1868 so as to except them from its operation, also avers that they were never offered for sale subsequent to that act, or subsequent to the reservation thereunder, is sufficient to warrant relief from the patent, on the ground that it was invalid for the reason that there had been no such re-offering of the land in accordance with the requirements of the act in question as to make them subject under its provisions to a valid private entry.

*Title acquired from government.* No title can be valid which is acquired from the government against law.

*Bona fide purchaser: Notice.* One who, prior to the issuing of the patent from the state to his grantor, knew that the state authorities claimed that the lands covered by it were reserved from sale, and knew of ineffectual attempts to purchase them from the state, has sufficient notice to put him on inquiry and to subject him to any equities growing out of any mistake or fraud under which the patent had been issued; and he is not entitled to any consideration as a *bona fide* purchaser.

*Heard January 26.    Decided February 26.*

Appeal in Chancery from Ingham Circuit.

*Isaac Marston,* Attorney General, for complainant.

*S. F. Seager* and *Ashley Pond* for defendants.

COOLEY, J.

This is an information the purpose of which is to vacate a patent issued by the commissioner of the state land office to Henry D. Smith, who has conveyed to the other defendant. The information alleges that the lands described in the patent are primary-school lands, in the mineral range of

the Upper Peninsula, rich in timber, wood and minerals, and which, previous to the taking effect of act No. 145 of 1863, were wholly withheld from market by law as mineral lands; that by that act the lands so withheld were required to be re-offered and sold in the same manner as other swamp and school lands, except such sections and parts of sections as the governor should thereafter select and reserve; that in pursuance of said act, the governor did select and reserve from market the lands described in said patent, at some time in the year 1863 or 1864, and the same have ever since continued to be selected and reserved from sale as mineral lands; that said lands were not offered for sale to the highest bidder, or in any other manner, as required by law, at any time subsequent to said act No. 145 of 1863, or subsequent to the reservation thereunder, and before the pretended sale thereof to Smith, which took place December 31st, 1872, and was made by the commissioner of the state land office, and patent issued by mistake and without authority of law. And the information avers that the Morgan Iron Company in receiving conveyance from Smith was not a purchaser in good faith.

Issue is taken by the answer on the allegations in the information, and the facts are for the most part agreed upon. The fact that these lands, with others, had been reserved from sale as mineral lands previous to 1863, seems clear enough, although the order of the commissioners reserving them is not to be found in the office. A paper headed "Michigan State Land Office, Dec. 1st, 1859," purporting to be signed by the commissioner, but really in the handwriting of one of the clerks in the office, is found and produced, and a printed copy thereof is pasted in the book of the land office, in which advertised offerings are kept. This paper purports to be a reservation from sale of these among other lands, and the commissioner officially reports them as reserved in his annual report for the following year. It is therefore a reasonable inference that the paper now found in the office in the handwriting of a clerk,

is a copy of an original now lost or destroyed; and the lands must be considered as properly withheld from sale at the time of the passage of the act of 1863.

That act provided that all swamp and primary-*school* lands in the mineral range of the upper peninsula theretofore withheld from market as mineral lands, except such sections or parts of sections as the governor should there-. after select and reserve, should be "re-offered and sold" in the same manner as was then provided by law for the sale of other swamp and primary-school lands. It then provided for an examination and appraisal of the lands so reserved by the governor, and that the governor and state treasurer should fix a minimum price upon the same, and certify such price to the commissioner of the land office, who should thereupon offer such land at public sale in pursuance of the existing provisions of law. The attorney general insists that these lands were duly reserved and appraised, and the minimum price of seven dollars per acre put upon the same under the act of 1863, but the respondents, admitting that certain steps were taken in that direction, deny that they were sufficient and effectual for the purpose.

It will be seen that under the act of 1863 the lands therein referred to were to be "re-offered and sold" without appraisal, with the exception of such as should be reserved from sale by the governor. The first question would therefore seem to be, what was meant by the lands being "re-offered" for sale, and whether any special steps or proceedings were required to put them upon the market. For if the lands previously reserved should appear never to have been re-offered for sale as contemplated by that statute, it may, for the purposes of this suit, be wholly immaterial whether the particular lands here in controversy were reserved from sale by the governor or not, since they would not be subject to sale until regularly re-offered as contemplated by law. It is insisted on behalf of the state that the re-offering contemplated by the act of 1863 was an offering at

public auction, and this never having taken place, the lands, whether reserved by the governor or not, were never in the market, and the sale was consequently wholly unauthorized. This position is disputed by the respondents, who insist that there was no law for the offering of these lands at public biddings, and consequently that the re-offering could be nothing more than the putting the lands on the market subject to private entry at the land office.

An examination of the statutes has brought us to the conclusion that the position taken on behalf of the state is correct. Under the statutes in force previous to 1863, a minimum price was set upon both primary-school and swamp lands, but none of them were permitted to be sold at private sale until they should first have been offered at public auction.—*Comp. L. 1871*, §§ *3817*, *3939*. Recognizing the great diversity in value of these lands, a settled policy had been established, that while none of them should be disposed of at less than a fixed minimum, an opportunity should be made for obtaining the highest price that competition could bring on offering them at public sale after due notice; and it was only after being thus offered, and after a failure to realize the minimum price, or something more, on such offering, that the lands were to be entered on the books of the land office as subject to sale on private application. We are not lightly to infer an intent in the legislature to depart from this settled policy in any case, and we certainly are not at liberty to infer it from any merely equivocal words in the case of lands which had been supposed exceptionally valuable, and reserved for that reason from the previous public offerings. But we do not think the words in this case are equivocal. The only offerings under the law which could bring primary school lands into the market were offerings at public auction; and therefore when lands were to be " offered " for sale, an offering at auction must be intended when the word is not otherwise explained.

The respondents insist, however, that, even conceding this to be the case, the information makes no claim for relief on this ground, but plants the case wholly upon a reservation of these lands by the governor subsequent to the act of 1863. We do not so understand it. The information avers, indeed, that the lands were actually reserved subsequent to that act, but it also avers that they were never offered for sale subsequent to the act of 1863, or subsequent to the reservation thereunder; the manifest purpose and effect being to deny any public offering either before or after the supposed reservation by the governor. Admitting that reservation to be ineffectual, the information would consequently still be sufficient to enable the state to rely upon a total failure to make any public offering of the land at any time since the act of 1863 took effect.

This being our view, the patent issued to Smith must be declared void. No title can be valid which is acquired from the government against law.—*Stoddard v. Chambers, 2 How., 284, 318; Hunter v. Hemphill, 6 Mo., 106.* It is not necessary to consider what might have been the proper conclusion had the Morgan Iron Company been a purchaser from Smith without notice of any facts which should put them on inquiry for defects in his title. It is admitted that previous to the issuing of a patent to Smith the officers of the company knew that the state authorities claimed that these lands were reserved from sale, and it is shown that they knew of ineffectual attempts to purchase them; and this was sufficient to put them on inquiry, and to charge them with notice of any mistake or fraud under which the patent had issued.

The decree must be affirmed, with costs.

GRAVES, CH. J., and CAMPBELL, J., concurred.

CHRISTIANCY, J., did not sit in this case.